The next case on the calendar is Vanginderen v. Cornell University. Kevin Vanginderen, Plaintiff Appellant in pro per. Good morning. Good morning. I wonder, could I just start asking what to me is kind of a common sense question? It appears that the purpose of your action was to keep in the past what was in the past. But by pursuing this action, you have put this before the world. What was your thinking? That it wouldn't be as widely dispersed before the world as it was. That the district court would have some common sense about what was submitted to the court and what should be considered evidence, rather than taking every submitted document of a sealed record and immediately admitting them as evidence so that they immediately can be published on the Internet. That's a fairly recent phenomenon and only allowed in certain courts. This one as lately as a year or two ago. I was stung by that circumstance, honestly. The bottom line, though, is am I supposed to sit back and allow a statement to remain on the Internet that is a bald-faced lie just because I don't want to have this kind of result come from it? I mean, somebody's got to stand up for this. Should I just sit back and live with it? And just say, after asking the party that put it up on the Internet to politely take it off and they refused, what other recourse is there but to file a suit for it? It was filed in state court. I had never intended it to go up to the federal court level. And I had no idea that the federal court would allow all documents of a sealed record to be instantaneously published upon the Internet. And I'm quite certain the defendant did and has done this to prevent future cases such as this from occurring. But, yes, unfortunately the result is very devastating. If you knew what you know now, would you do it again in terms of filing? I've gone back and forth on this. And in the end, I believe that I have to believe in my heart that I've done the right thing, if not for myself, then for future parties who might deal with the same circumstance. Because I believe that the defendant, Pelly, has just gone to war with me legally and is doing this for the purpose of preventing others from coming forward to this effect. And in the end, I think maybe I'm the whipping boy in the end for this, but it's for a purpose. And that's what I have to ultimately reconcile myself with. It's difficult to know where to begin with this. Quite frankly, I think the two rulings of the district judge and his actions in allowing this to be published on the Internet are, quite frankly, stunning. First, I don't believe the legislative intent of the California Anti-SLAPP Code was intended for litigation of this nature. It is really designed to prevent retaliatory lawsuits in regard to other lawsuits being filed. The Anti-SLAPP Code and the First Amendment certainly do not provide protection to statements that constitute libel or an invasion of privacy, such as the cases of Barr. These two cases stem from a libel statement that specifically alleges personal vomit with 15 distinct and separate incidences. The defendant and Pelly have chosen to assert the truth as a defense for such, but they haven't met the burden of proof for such. They haven't shown that it's true or even substantially true. They have not provided these courts with a single document that is authenticated by its purported author, yet the district court has chosen to base its initial decision not only upon these documents, but also hearsay statements contained within them. Even if these inadmissible exhibits were to someday be properly admitted as evidence, they don't even establish the connection to 15 separate incidences and, in fact, less than half of that. The district court's decision that the libel statement is substantially true is quite simply wrong. It's just not true. While the defendant, Pelly, has argued within its brief that the burden is upon myself to establish that the libel statement is false, it has shifted the burden upon itself. It's establishing its burden of showing the truth of the statement. I have shown that it's not true in the affidavit that was included in the brief. The district court's decision to base its ruling upon documents that are unauthenticated by purported authors or which include a copy of a supposed transcript that's neither signed by anyone, not attested to by its preparer or any court reporter, and its author currently remains unknown, is preposterous. This would never have been used in a criminal case to uphold any kind of conviction. This is especially true considering the court has quoted hearsay depictions of gestures within the alleged transcript rather than actual statements supposedly recorded in them as its main basis for the ruling. The court's reasoning for accepting these exhibits into evidence is based upon a tenuous premise that because the defendant, Pelly, has simply proclaimed they are documents retrieved from potential court files, they are therefore admissible without authentication by the purported authors. However, it's not true that the documents that he most primarily relied upon were ever part of a court record. In fact, two documents that the court primarily relied upon were never submitted to any court and were just part of a sealed campus security file for 24 years. That's one of the arguments. What, was the file actually sealed? Absolutely it was sealed. It, in fact, has a stamp on it saying it was sealed. When I first spoke with the defense attorneys, they told me it was sealed. We want you to unseal this record. And at the time I was thinking certain documents in it, yes, are relevant. But the local newspaper was not sealed, right? The campus newspaper was not sealed. Well, the campus newspaper was in a, it was something that was just put on campus for a week or so and disappeared. But the fact is this, the allegation about your actions was noted in the student, was it a student newspaper, adult, I don't want to, newspaper, it wasn't. It was a newspaper that was circulated on campus at the time, is that right? Well, calling it a newspaper is a stretch. It's only just an advertisement for the campus itself. It was a, it was certain writings on sheets of paper that described what you allegedly did. That happened, right? What I allegedly did not do. Well, that's what, they reported what supposedly happened, what you were charged with, and at that time no action was taken, right? Because I wasn't aware it existed. Okay, you weren't aware you'd been charged? I, yes, but not with the statement that it was 50 separate incidents. I know one incident. Okay, well, whatever it was, it was in the paper. You didn't bring any action at that time alleging libel or anything like that? No knowledge of it at that time, and I'm not. No knowledge that you had? Yeah. Bottom line is this case is brought forth for what was published on the Internet 24 years later, a medium that didn't even exist at the time of that original. Well, your problem, it seems, Counsel, is that you've got new media that distribute things that have been long, you know, lying quietly. So you don't like the Google project, basically, for one thing. But the reality is the media is there. It happened. The fact that this is in a, it was published. You didn't bring an action against them at the time. How, at this point, I guess I'm having difficulty understanding your motivation and where you feel people went wrong. This was a publication of what allegedly? This was a newspaper that apparently now, in retrospect, was put in a library collection amongst millions of other pieces of paper that go back hundreds of years. Let me ask you a question. You know, I feel for you. I want you to understand that. But, you know, you bring a lawsuit, and the unintended consequences sometime are appalling. And this is what happened, I think, in this case. Have you and Counsel, I don't know how you get along, but have you ever considered the thought of getting together to really, instead of a lawsuit, let's have the lawsuit, maybe working out some deal where you agree that the records in this court, maybe the records in the district court, should be sealed so the damage which has been done to you won't be continued. Have you ever thought about that? I would love to have some kind of settlement negotiation. Well, why don't you try it or I'll try it. The only settlement discussion has been you pursue this, and we're going to file for an anti-slop suit, and then they file this. Well, let me warn you, I'm not talking about what was. I'm suggesting what is, and I'm going to suggest that to Counsel, too, and not that anything will happen. And, of course, we do have a court mediator here so that we don't have to write an opinion. So consider it, both sides. I would definitely consider settlement negotiations that have just simply never occurred other than the threat to expose. I received a letter saying that this will be exposed in a massive forum, which it has, and it's hard for me to believe that this is just incidental from the suit and not intentional behavior on the part of the defendant. The bottom line is there is a false statement on the Internet that should never have been put there. It's a medium that didn't even exist. It's a separate publication. The Internet is a far more pervasive form of communication than a paper that was distributed for a week that nobody that I even knew or myself existed, and now it sits supposedly in a library for 25 years and then all of a sudden is put upon the Internet. That is a republication. There's no other way to say it. If the suit was brought forth 24 years ago when ideally I would have been notified of this situation, would they now feel comfortable republishing it knowing that it's a libelous statement or if it was found such back then, would they be comfortable putting it on a totally different medium like this and thinking it's not a republication? How can it not be a republication when Internet didn't exist back in 1983? Counsel, you've consumed all of your time. Okay. I will, Counsel, I will allow you a minute to respond. Good morning. May it please the Court. I'm Nelson Roth. I'm here on behalf of Cornell University. I'm here with my co-counsel from Case No. 1, our local counsel in Los Angeles, who appeared on behalf of the university in Case No. 1 and turned up as defendant in Case No. 2 merely for having the temerity to represent the university vigorously in the first case. Let me say at the outset, Your Honors, that it's an honor to be here. I've never been in Fargo, but I do come from Ithaca, and it's a pleasure to escape. Well, I suppose I told you that I've been to Ithaca. I've been to law school, and I've been to moot court, and I think Cornell is a very wonderful school. I've had law clerks from Cornell, and that's why I want you to take seriously the suggestion that I'm saying, is instead of us having to write an opinion, see if you can't resolve this so it's going to serve the best interests of the university and the best interests of the plaintiff, who obviously, to me, has suffered unintended consequences of this lawsuit. Your Honor, we certainly take that to heart. Let me just say that the record does have an inkling of the discussions that occurred prior to the commencement of the lawsuit. I understand that. I know that he turned you down when you wanted to talk about it. I know about that part of it. But I'm just saying, forget what was, and I've been around, you know. I've been a lawyer and a judge for 62 years. And one of my passions is that courts ought to try to do justice. Sometimes we can, and sometimes we can't, because we have to follow the law. And I'm just saying that there's some appealing things in this case which you ought to consider. I know you're a good lawyer. I have a feeling for the plaintiff, and I think there are things that could be done without having this to be litigated further. But go ahead with your argument. Just keep that in mind, and you've said you'd do what you could. Yes, Your Honor, we certainly will, and we're more than happy to talk. But let me just say. Well, that's okay. That's enough for me. Let me just say at the outset that addressing that point specifically, New York law is very clear, and I know Mr. Van Genderen is familiar with it, and that is that if you sue somebody over a record, whether that record's sealed or unsealed. I understand. It's unequivocally clear under longstanding precedent that any sealed record will be unsealed. I'm familiar with that rule. I'm familiar with that, and I'm not questioning that. The irony here, Your Honor, is that the whole sealing issue is a complete red herring. I sat here stunned in the courtroom this morning listening to Mr. Van Genderen as I was when I read his briefs, and that is because there is unequivocal cumulative proof of the underlying facts that he simply wishes to ignore. It's ironic that we're in a public courtroom, and I certainly feel honored to be here, and if there are any reporters in the audience watching this, they certainly have the right to report on these proceedings, and if 25 years from now a sociologist or a political scientist or a law professor decides that they want to write about this case, they'll no doubt utilize whatever technology is available at that time and will have free access to the records of this case unless this Court for some reason were to bar that. But I mention this only because I don't want to lose sight of the significance, the public significance of the issues that are actually raised in this case. I understand that Mr. Van Genderen was certainly unpleasantly surprised by what he apparently discovered in 2007, though I do note, and it's in the record clearly at page 141 of the excerpts of the record that Cornell submitted in connection with case number one before the two cases were consolidated, this was an unsuccessful motion by Mr. Van Genderen's attorney to dismiss in the interest of justice. And in that affidavit that he submitted to the Ithaca City Court back in 1983, he specifically said, Kevin's character is such that it has reacted tremendously to the shame and indignity of a publicized arrest and prosecution. He knew back then that this matter was publicized. It was publicized by a newspaper of general circulation on the Cornell campus that had over 10,000 copies in distribution. It's been in the library ever since, according to the affidavit of Ann Kenny, the university librarian. It was transferred to microfiche some years ago and is contained in microfiche. And what Mr. Van Genderen would apparently have this Court do is somehow erase this entire history. The fact of the matter is that the gist of the article is that he was charged with burglary in the third degree for numerous incidents of burglary and theft, and they recovered $474 worth of stolen property at the time that he was arrested, a fact that he doesn't dispute anywhere in these papers. He doesn't even raise it. So Mr. Van Genderen cannot stand here and say that that article is false because he was in fact charged. The accusatory instrument is in the record. It was never sealed. I'm flabbergasted that that's still an issue. It was my mistake, Mr. Van Genderen knows it. I went to get the police file that was sealed, and so I made a motion in the city court to unseal it. City court said no need, it is not sealed. Mr. Van Genderen was charged with burglary in the third degree and entered a plea to a Class A misdemeanor, larceny, in open court, and that conviction still stands as a public record. What happened was that the DA erroneously overcharged. The indictments were dismissed. The county court, the higher court in New York, dismissed those charges with lead to the district attorney to refile. And sealed the record as is customary in county court with respect to the two improperly returned indictments from the grand jury. That had no impact. In fact, if you look at the court order that's in the file, there is no seal order directed to Ithaca City Court. Mr. Van Genderen wants to suggest some sort of nefarious plot because Ithaca City Court has crossed off the facts cover sheet that accompanied the order. But if your honors look at the actual seal order that's in the file, it doesn't make any reference to Ithaca City Court. And it would be an astonishing notion that there would be a seal order in any event with respect to a conviction of a crime in open court. Under the case law, would it make any difference for anti-SLAPP purposes if it had been a sealed document? I don't believe so, your honor. And the reason is, as you pointed out earlier, this was a newspaper article that was published on March 17, 1983. Mr. Van Genderen pled guilty, I believe, on August 22, 1983. This record wasn't the county court record, and the police file wasn't sealed until 1985. So what you have is a matter of public record way back from the beginning was a charge of burglary in the third degree and a conviction for arsony that still stands today. You know, one of the things we have in our jurisprudence is charges which are unproven are not considered true. I know in this case the issue was were these charges made, but the end result is that the reader is going to think they were true. That's unfortunately the way people look at things. And that's one of the unfortunate parts of this case. The result of what has happened is that he has been smeared with charges that were never proven. Do you follow me? Your honor, I would respectfully disagree. Well, the fact that he's charged with third degree burglary and pleads to misdemeanor is not proof that he committed the third degree burglary. His own signed confession in the record with his signature on it, which he denies, but it has his signature on it. He admits to committing multiple burglaries. You don't get what I don't care what the investigation says. The person is presumed innocent under our jurisprudence. And all I'm saying is what has happened here is there are numerous charges. It happens all the time. You know, people plead to a lesser offense, and that's what they're guilty of. But you can't charge him with being guilty of a third degree burglary when he's had no conviction against it. I don't care what he signed. Your honor, again, with all due respect, I would submit that that happens every day. People are charged. The New York Times, the L.A. Times, the Fargo paper, if a good journal publishes it. We don't then go back to the newspaper and say you need to cleanse your archives of newspapers. I'm not saying that. You know, I don't know what your mindset is, but obviously all I'm saying are truths that every lawyer knows. The person is innocent until proven guilty. Now, I know we're not going to decide he's guilty of third degree burglary, and neither can you. And we don't need to, your honor. Well, I know you don't. We don't need to because that's not really an issue in this case. The issue is the truth of the article that was added. Right. I know that, yes. And I'm not questioning that. I'm not questioning that, but I'm questioning the unintended effect. I think the reader of this record is going to say this individual, who obviously made a mistake when he was young and obviously has lived a good life, has been smeared unintentionally, but nevertheless has been smeared with charges that were never actually proven in the sense of his being convicted. And, your honor, I would simply say that this was buried on page six of a newspaper that barely was a blip on any electronic horizon, but for Mr. Van Genderen's litigation. It's a terrible mistake. I agree. I would say this to kind of wrap it up. I have empathy for both parties on this. I can assure everyone that if Mr. Van Genderen were going to become a federal judge or wanted to be one, that everybody in the Senate would know about that article and everybody in the Senate would know about everything else because that's part of his life history, whether proven or not. Sadly, this case, we'll take it back to the Eighth Circuit because it probably ties in there. I would say that this, we'll call it the Fargo rule. If there's a cow pie out in the pasture and it's still wet, don't stir it. Let it dry. It would be nice to have some precedent on that, your honor. It would. We'll see what we can do. Thank you very much. Thank you, Mr. Roth. Mr. Van Genderen, I'll allow you a minute. I would ask if you found a similar statement about yourself on the Internet, what action you might take for yourself. The timeline that the defendant has just laid out is ultimately false. Yes, there was a single accusatory instrument brought back in 1983. It was then, everything was totally dismissed. There was a seal order. It's in the record for the entire matter. Three weeks later, a separate accusatory instrument was brought forth in the City of Ithaca Court, and that was what the plea was to. Those are the only unsealed records prior to this matter. The bottom line is, everything was sealed. The very code that they used to unseal the record within the New York court states specifically that when a court dismisses charges, the seal order is directed to every court. It says specifically to any court. It was directed to two of them, apparently, and erroneously, or possibly it was directed to the City of Ithaca Court. It should have gone to them. It was supposed to go to them. It was actually listed on the document and crossed out for some reason, but it's a sealed record. Everything in that article is a part of that original accusatory instrument and dismissal, and that is sealed. What happened subsequent to that was never reported in the Cornell Chronicle, and the other mistake that the defendant said is that my attorney did put in the record that I was aware of this being publicized. It was publicized in a different newspaper, the Cornell Daily Sun, and it was listed properly in there as one single incident and not 15 as it was in the Cornell Chronicle. That's what I knew about, and he is just making pure conjecture by saying otherwise, stating that I was aware of this other article at the time. That's not true, and there's no evidence of that. Thank you very much. Okay, thank you. Vengendron v. Cornell University is ordered submitted.
judges: Bright, Bybee, Smith M.